Anderson, J.,
delivered the opinion of the court.
William Lyon departed this life in March 1863. Previous to his death he made and published his will, bearing date the 7th of July 1859; by which he bequeathed to the children of his deceased daughter Elizabeth Hill, all of them infants, and his three living daughters, and his son James, the whole residuum of his estate; and appointed Witcher W. Keen his executor. All the property given to his daughters and to his son James by his will he vested in said Witcher W. Keen as trustee, to hold the same for the sole and separate nse of his said daughters, free from the debts of their respective husbands, and after their deaths to go to their respective children, as he had before directed. The bequest to his son James was made to him for life, remainder to his children by the woman Jane, to the exclusion of any children he has by any other person. The children of Elizabeth Hill were to get one hundred dollars less than a child’s part, and his son James was to get one hundred dollars less than a child’s part; and none of the other children to account for any advancements theretofore made.
The tract of land which he-calls his Thomas tract, containing about two hundred and seventy-five acres, *396 he directed to be valued by two- neighbors, and to be taken by his son William at valuation, and to be accounted for by him in the equal division. William died before the testator, unmarried and without issue; by reason whereof this devise to him lapsed into the residuum. This controversy is in relation to that tract of land.
W. W. Keen, the executor and trustee, claimed to have purchased it from the testator in his lifetime; and after his death he filed his bill in chancery in the county court of Pittsylvania, on the 16th day of November 1863, against the widow and devisees and legatees of William Lyon deceased; alleging that he had purchased the said tract of land of the decedent in his lifetime, had paid him the full amount of the purchase money, and had taken possession of it under his purchase; that said Lyon had departed this life without conveying him the title; and he prays that the title may be conveyed to him. On the same day, November 16th, 1863, a decree was pronounced in the cause, that James M. Williams, who was appointed a commissioner for the purpose, do, by proper deed with special warranty, convey the land in the proceedings mentioned, as part of the Thomas tract, with the mill thereon, to the plaintiff. And on the 19th day of September 1864 an amended decree was entered, correcting the foregoing decree as to the description of the land to be conveyed; describing it as the interest of said Lyon in the said tract of two hundred and seventy-four acres, and also directing a conveyance of his interest in a tract of twenty acres with mill thereon, which, in fact, had not been claimed by tbe bill. No conveyance was ever made.
On the 5th of April' 1869, Mary Ann Hill & als., infant children of Elizabeth Hill, who sue by their *397 next friend, Ellen- H. Lyon, and Mary W. Howerton and Nancy Howerton being femes covert, bolding separate property, who sue by their next friend, Ellen H. Lyon, whose husbands, William H. Howerton and James H. Howerton, are made defendants, and Martha Carter, daughters of said decedent, filed their bill in chancery in the circuit court of Pittsylvania county against W. W. Keen in his own right, and as executor of William Lyon, and trustee as herein before described, and others, in which they allege the suit brought by said Keen in the county court, and the decree in his favor for the conveyance of title, which they are informed has never been made. They charge that said decree was made upon an alleged agreement of purchase by said Keen, and an allegation that he had paid the whole of the purchase money. They expressly charge that said Keen never paid one cent of purchase money to the said Lyon in his lifetime, or to any other person at any time, and that he is largely indebted to his testator’s estate as executor; and they further charge that they were not parties to said suit. The infant children of Elizabeth Hill, by their next friend, charge that they were never made parties to said suit, and are not bound by the decree; and they charge that there never was any contract in writing between the said William Lyon in his lifetime and the said Keen for the sale and purchase of said land.
The appellants claim the right to hold the land by virtue óf that decree in favor of W. W. Keen. If the appellees were not parties to that suit as they allege, or if said decree was fraudulently procured, which though not expressly charged, if the facts alleged be true, is established, said decree is not binding on them, and can confer no rights upon Keen, or those who claim under him.
*398 There appears to have been no process against them. There is, with the papers in the cause, a paper which professes to be. the answer of the -defendants named. But it is not signed by either of them, or by anybody for them, and two of them, William H. and James H. Howerton, who are made defendants in this suit, swear that they never authorized any one to put in their appearance, or to answer for them, and that they did not .know of the suit. And the others who are plaintiffs in this suit aver that they were not parties to that suit, and thus is the onus thrown upon the appellants, to show that they were, in order to bind them by the decree.
It should appear from the record itself that they were before the court. There is nothing to show it unless the-paper referred to is their answer, and was filed as such by their agency, or at least with their knowledge and consent. That does not appear. How it got amongst the papers is not shown. It might have been put there by the plaintiff himself without their knowledge or consent. There is nothing to show that any one of them had any connection with it or any knowledge of it. Unless it was their act, or done with their consent or authority, it is not binding on them, nor shows an appearance on their behalf, or that they were before the court.
The circumstances attending the procurement of said decree tend strongly to negative any equity in the plaintiff in that suit, and are so indicative of fraud in the procurement of the decree as would disincline a court of equity to give it effect.
What were the relations of these parties ? On one side they were married women, daughters of the testator, who had a life interest, and their children, who had the remainder thereof, a son of the testator, who *399 was not sui juris as to this property, who had a life interest, and his children who were entitled to his interest in remainder, and the infant children of a deceased daughter of the testator. On the other side was the plaintiff, who was the executor of the testator, and who was constituted trustee by the testator’s will for his said married daughters and his son and their children, who was seeking to acquire title in his own name and for his own benefit of property, which had been intrusted to him for their benefit. His relation to the widow of the testator and his children and grandchildren was a relation of confidence.
Holding this relation of confidence not long after the death of the testator, flagrante bello, he has a paper prepared, to which he obtains the signatures of the widow and her children, in which they are made to acknowledge the sale of the land in question to him by the testator in his lifetime, of which he received possession, but no conveyance, and authorizing and requesting the court to make such decree as will complete the contract and make good the title to him. This paper is dated October 9, 1863, and is not addressed to any court, no suit being then pending. But armed with this paper, on the 16th of November following he institutes his said suit in the county court of Pittsylvania county, files his bill, and on the same day obtains the decree aforesaid, which, nearly a year after-wards, he has amended as herein before described. He (Joes not set -out in his bill any contract of purchase; he merely alleges that he purchased the land in the lifetime of his testator, and paid the full amount of the purchase money. Nor does it appear in any part of the record of that suit, or this, what price he was to pay for the land. But it does appear now, that the *400 allegation of his bill that he had paid the whole amount of purchase money was untrue, and that he had not in fact paid one dollar thereof.
If he had disclosed the truth in his bill, which, in the relation he stood to the parties, he had no right to-suppress, much less to misrepresent, he must utterly have failed to have obtained the decree which was entered. It was consequently procured by a deception practised upon the court—a representation which he now virtually admits, in his answer to the bill in this suit, was not true.
There was no evidence before the court of the alleged purchase except the paper above referred to. And that is not entitled to the weight of evidence. It was, in fact, but a certificate of what they had been informed of by Keen himself; for they do not appear to have had knowledge of it themselves, and evidently relied upon his representation, and were influenced by the relation of confidence which subsisted between them to sign the paper. Surely such an acknowledgment could not divest married women of their estate in land, of which, under the statute, they can only be divested upon privy examination properly certified, and it could not divest their children of their interest, nor the infant childen of Mrs. Hill, who were not parties to it.
The whole procedure, instituting the suit flagrante hello in the county court, to acquire a transfer to him of the rights of infants and married women, which he held in trust for them when their husbands were soldiers in the army, upon testimony procured through the influence of confidential relations, upon the mere allegation that he had purchased the land, without setting out the contract or the price he was to pay for it, *401 and upon the false allegation that he had paid the full amount of the purchase money, when, in fact, he had not paid one dollar, shows so conclusively the fraudulent procurement of said decree, that it would be rendered null and void if all the parties had been befoi’e the court, which it seems was not the case.
The court does not therefore regard said decree of the county court as interposing any barrier to the relief which the plaintiffs in this suit seek to obtain. And upon the merits, the court is of opinion that the devisees and legatees are entitled to have the land in question embraced in the partition and distribution of the estate of their testator, the evidence being insufficient to establish such a contract of sale by the testator in his lifetime to W. W. Keen, and such a performance on his part as would entitle him to a decree of specific performance.
The court is further of opinion that the appellant, A. Gr. "Walters, having purchased from one who had no valid title, cannot hold it against parties whose title is good in law and equity, and of which they have never been lawfully divested. And if the decree in favor of his grantor was invalid, he was not invested with the legal- title, and his equity could not prevail over the prior equity of the appellees, upon the authority of Briscoe v. Ashby & als., 24 Gratt. 454.
The court is also of opinion that the demurrer to the plaintiff’s bill, on, the ground of multifariousness, was properly overruled. Before the Code of 1849, courts of equity could pass on all equitable questions arising in cases of partition. And they may now take cognizance, under the provisions of the Code, of all questions of law affecting the legal title that may arise in such proceeding.
*402 The court is also of opinion that it was not error to remove W. W. Keen as trustee in this suit, as ancillary to the design and object of the suit, and to appoint another in his stead. "Upon the whole, the court is of opinion that there is no error in the decree of the circuit court, and that the same be affirmed with costs.
Decree aeeirmed.